Case number 18-1997, Union Commercial Services Ltd v. FCA International Operations, et al. Argument not to exceed 15 minutes per side. Ms. Week, you may proceed for the appellant. Good morning, Your Honors. May it please the Court, I'm Katherine Barrett-Wick, and I'm joined today by my colleague, Michael Hamaway, representing Appellant Union Commercial Services. I'd like to reserve two minutes for rebuttal. This is a dispute between Fiat Chrysler, which I'll refer to as FCA, and its long-time Angolan vehicle distributor, Union Commercial Services. For many years, my client, Union, was the only authorized distributor of Chrysler, Jeep, and Dodge vehicles in the African country of Angola. Union has alleged that this relationship went sour and that FCA stopped working with Union because Union refused to engage in bribery, in the bribery of Angolan officials that would have allowed FCA to sell more vehicles. And this was by spurning an offer for a government-affiliated entity, AutoStar, to become an owner of Union Commercial. Union is now substantially out of the Angolan market, it's lost the business it spent almost 25 years developing, and it's also out of court at the pleading stage. This court should reverse and allow the proposed amended complaint to be filed because the District Court committed at least three errors. First, in refusing and dismissing and refusing to allow amendment of the breach of contract claims on the theory of implied covenant of good faith and fair dealing inherited in every Michigan contract, the District Court failed to recognize that the distributorship agreement at the heart of this dispute authorizes FCA to have all manners of discretion in the way that it performs pursuant to the contract, in particular in the three provisions that we have cited as the basis of our contract claims. Second, the District Court erred by dismissing and refusing to allow amendment on our breach of tortious interference claim because Union pleaded all of the elements of this claim under Michigan law, as well as plausible facts showing that FCA had in fact committed this tort. And third and finally, the District Court applied the wrong legal standard at the pleading stage. The court did not apply Twombly, the plausibility standard. Instead, the court dismissed the complaint using language like the court could not conclude that FCA had engaged in bribery and that Union had not established that there was intentional interference. This is simply not the standard and the complaint should proceed. I'm going to start by going into more detail. If I may, counsel, ask you to start with where is, in your case, where is there any performance obligation on the part contractually by FCA, Fiat? Where does the contract require anything of Fiat? Well, I think there's numerous portions. The whole point of the contract is, of course, for Union to be able to buy goods, buy cars from Fiat. The point of the contract is Union must do this, that, and the other. FCA, Your Honor? No. I'm sorry. FCA. Yeah. Well, so one of the particular claims is under 8.1 relating to orders. So 8.1 says that Union has to place orders according to the terms and conditions that FCA sets out. Then it incorporates and references Annex 6, which is FCA's terms and conditions. In that Annex 6, I'll get you a page site. It talks about numerous obligations. They are discretionary, which is why our implied covenant claim. So this is at page ID 415 is where this... Discretionary. Do we equate that with an obligation? Obliged to do what? Well, they're obliged to choose to perform in a way that does not deprive Union of... So in good faith. So the obligation is to perform those, make those discretionary decisions about performance in a way that does not deprive my client of the fruits and benefits of the contract. So just to turn back briefly to that sales and conditions, there's language in there about Chrysler using its best efforts to fulfill orders. If the demand outweighs supply, the Chrysler has to allocate supply, but in a reasonable manner. So there are... Just to give one example, 8.1 is one example of where FCA does have obligations to perform and generally to perform... What exactly does FCA need to do in 8.1? FCA has to work to fulfill the orders that when Union says, we can sell these cars, we need you to fulfill these orders. It has to act in good faith to fulfill those orders. So 8.1, as I understand it, and maybe I'm reading from the wrong place, distributors shall place orders for contract goods through any systems and in accordance with any procedures that Chrysler may require or implement from time to time. So where's the duty for Fiat Chrysler? The duty is in... So that provision goes to the next page. So references... Basically, it says Union has to order subject to the purchasing or the ordering terms and conditions, the sales terms and conditions, and then reference that and incorporates it in Annex 6, and that's what I was just reading from. It talks about... To Annex 6. Right. It talks about Chrysler having an obligation to make its best efforts to fulfill orders and to act reasonably if, for instance, the demand outweighs the supply. So those are just some examples. I'd like to talk, though, about 13.6, which is one of the... Is there any verb shall in this contract that says Chrysler shall do anything? It does... Repeatedly, it says Union shall. Yep. But I'm looking for a place where it says Chrysler or Fiat, whatever you want to call it, FCA shall. Well, I think that's the point exactly, Your Honor, as to why this contract is mandatory terms on a Union commercial. First of all, the answer is I don't have a shall. Well, I think I was going to look at... It's the claim I think we've dismissed, the repayment. I think that there was some shall in the obligations to repurchase rather than repayment. The repurchase obligations, I think that... It would help us a lot if you would be able to point to the provision that includes a shall. I'm not going to take all your time. No, I understand, Your Honor. The bottom of page 402, Chrysler shall repurchase or distributor. I think there are some obligations. I just want to make the point that those are not the claims that are active now. The claims that are the basis of the breach of implied covenant in good faith and fair dealing are all provisions... They do not hinge on a shall. Correct. They are provisions that allow FCA to have discretion as to how it performs, and that is why there is not, unlike FCA argues and the district court found, that we're trying to use it to override express terms. That's not what we're doing with that claim. What we're saying is FCA wrote a contract that allows it wide discretion in how it performs, but it's in the context of Michigan law that says when it has those discretionary choices, it has to act in good faith and not act in a way such as they did to deprive union of the benefits and fruits of the contract. And so looking at this Annex 6, that first paragraph, orders, does seem to at least impose on Chrysler some duties that the first paragraph distributor may not cancel or modify without consent of Chrysler. Chrysler may accept or reject any order in whole or in part. Chrysler will use its best efforts to fill accepted orders. That's right, Your Honor. That's just one of the examples of where FCA did take upon itself some specific obligations contractually in addition to the implied covenant of good faith that's just at the heart of all the contracts. Was the Annex 6 cited in your brief? I actually had not. I'll admit I had not seen it, but I... Yeah. Is it 8.1? Yes. Yeah, I think in our opening brief we excerpted 8.1 and we did not include the full provision, and I believe it didn't include, you know, we did like a dot, dot, dot ellipsis to take out Annex 6. Sorry. Okay. I mean, I didn't see the words Annex 6 in the... Yeah. I don't think so. But, I mean, the agreement is attached. The proposed amended complaint is, you know, is part of the record, and that is part of the... You need it to bring it to the Court's attention, of course. But 8.1 is the claim, Article 8.1 is the claim that you didn't raise in the initial complaint, but you're seeking to add in the amended complaint. Yes. 8.1 and 13.1 are the breach of contract claims that were part of the proposed amended complaint, and that would...for which Lee was denied. Why were they not included in the original complaint? I don't...I honestly don't know the answer to that. I think it just maybe wasn't the focus of the analysis at that time. But there was no, you know, the time...the amendment was timely sought. There was no argument that, you know, there was any dilatory action. And the reason that the district court gave for denying it was, frankly, respectively, a flawed reading of the provisions that survived, that continued to impose duties beyond the life of the contract. And that's not...that is not a proper reason for rejecting this. So I do want to... This claim just pertains to the time that the contract was in force, right? Yes, correct. 8.1 and 13.1, those claims are about the duration of the contract. I really want to say a few more words. I haven't said much about 13.6, which is... What was the...if there was an obligation on Chrysler to use the best efforts to fill accepted orders? Yes. The conduct here was to negotiate a distribution agreement with another entity that would be a competitor. How is that in conflict with filling orders that have been accepted? Well, it's not just that it was a competitor. It's that it was an entity that FCA knew violated its obligations under the Federal Foreign Practices Act, but also its obligations under 13.6 of the agreement to operate the deal between the parties in a way that was free of corruption. So they... I thought we were talking about 8.1 and Annex 6. Yep.  You made a point about filling orders. But they didn't fill the...I'm sorry. Go ahead. They didn't fill the orders. So Union came to them and said, we have some deals. We can sell 39 Jeep Cherokees. Our client has contacts that it had cultivated in the police and the military, but that it got those deals without engaging in corruption. So my client came to FCA and said, we have these orders. We want to fill them. And FCA didn't fill them with my client. FCA instead went to the auto store, which was trying to take over the market and has really succeeded in doing that. Fill those orders that way. Absolutely. Yes. I feel like the dealers a lot of times will enter into agreements that actually are exclusive within a certain region. It's very common in the states. And this being a non-exclusive agreement gave Chrysler a lot of room to utilize someone else and maybe say, we prefer to have this entity fill the orders, not that one. Yes. Our claims, I mean, at essence, we are not arguing that they had an exclusive obligation. We know that it was a non-exclusive contract, but they have an obligation. The fact that it is not exclusive does not relieve them of their obligation to perform under the contract in good faith, and it does not relieve them of their obligation that they contracted to, to operate in a corruption-free environment. And so the fact that they were turning away our client's orders and fulfilling them instead with this entity that was bribing the Angolan government by enriching officials and people with close relationships, that violated the implied covenant of good faith and fair dealing in 13.6, in which the parties agreed to operate in a corruption-free environment, how the orders had to be filled, 8.1 and 13.1. But 13.6, does that have a duty of fiat to comply with the laws of, like the U.S. Foreign Corrupt Practices Act, or does it require a union to comply with that law? So like the discussion we had with 8.1, it imposes a mandatory duty upon union and a discretionary duty as a contractual matter, not as a statutory matter. As a contractual matter, it says that distributor will cooperate with Chrysler and Daimler's efforts to comply. So it doesn't mandate that they're going to comply. It says whatever efforts they take to comply with their anti-corruption provisions, union's going to help them to do that. And that's why union thought it was agreeing to contract in a corruption-free environment. That's also the way they've performed their business for 25 years. I see my original, my opening time is up, so if there's no more questions, I'll conclude this portion just by reminding the court that we know that Twombly does not countenance dismissals at 12B6 simply because a judge doesn't believe the plaintiff's factual allegations, but that's exactly what happened here and why you should reverse. Thank you. You're a lot taller than me, so I'm going to have to do that. Good morning, Your Honors. Jill Wheaton for the defendants at Belize. At counsel table with me is my associate, Enoch Gavrilovic, and Roberto Berry and David Luddington from FCA are here as well in the peanut gallery. Counsel for union made a lot of claims about, we realize it's not exclusive. We realize it's not exclusive. But by the same token, she opened her argument by saying we were the only authorized distributor for years. And if you look at the damages that are sought in the remaining claims that they seek to resuscitate and or add, every single one seeks the exact same damages. The lost profits the union would have earned based on the sale and distribution of Chrysler motor vehicles and parts in the territory. So they're trying to make this an exclusive agreement when it isn't. And they're trying to do that through all sorts of, frankly, twisting themselves into pretzels and talking about implied covenants and now today we learned, well, I know we pointed at 8.1, which had an implied covenant, but the implied covenant is really in Appendix 6 to Article 8.1. The bottom line is you need to look at the provisions for what they say, not what counsel is saying they should say, not what counsel is saying you should interpret them, not what counsel is saying you should add to them by implication, but by what they say. But the implied covenant of good faith is implied. As a matter of law, it's not written in contracts, we will act in good faith. Instead, by definition, its doctrine is implied covenant of good faith. Correct. And it's implied in certain circumstances and not others. It's implied in circumstances where, for example, the contract makes performance a matter of one party's discretion, and that's from a lot of cases, including Stevenson from this court. You can't impose an implied covenant to override the express terms of a contract, which is what they're trying to do here. I think they realize that. And when you look at the implied covenant cases, normally they're the kinds of cases where, for example, a commission or a bonus is going to be paid. I'm going to get a bonus if you, the pharmacy, for example, in the dome case, sell a certain amount of prescriptions, and then the pharmacy doesn't want to pay you their bonus, so they sit by, close their doors, and say I'm out of business for six months. That's the kind of thing where my discretion in what I do completely depends or dictates what you get. That's not the circumstance here at all, because as Judge Riedler pointed out, this agreement since day one, Article 1.1 of the agreement, says union, I agree that I'm not the exclusive distributor, and I agree that Chrysler can have other people sell these goods. Well, guess what? Chrysler had other people sell these goods, and union got a little upset by that. What about Annex 6 and the statement that I just pulled out, there may be others in it, that Chrysler will use its best efforts to fill accepted orders? Yeah, that's what it says, but that's not what this case is about at all. If you look at the amended complaint, it deals with everything Judge Riedler talked about. It deals with you did business with AutoStar, and AutoStar has people in connections with the government, and therefore it must be corruption. I mean, the leaps are humongous. There are obligations on FCA throughout the contract. There are some obligations in Article 8.1. But this case is not we had these three orders which you, FCA, failed to fill, and therefore you violated 8.1. Instead, their argument is 8.1 requires good faith, violating the bribery laws isn't good faith, you violated 8.1. It's an awful lot of leaps. They did have, frankly, kind of a legitimate claim in the beginning of this case under 14.4, which has all sorts of obligations on the part of FCA when a dealership agreement is terminated. One of them is buying back parts. We did not seek to dismiss that claim. They continued to prosecute it, and then they threw in the towel partway through. Those are the kinds of claims that they could bring. But this 8.1, 13.1, 13.6, all based on an alleged implied covenant of good faith and fair dealing to avoid corruption were properly dismissed by the district court. Did FCA have the right basically to terminate the agreement at any time? Yes, with one year's notice, which they gave. Where is that in the contract? Well, it doesn't matter. It wasn't cited to us, was it, the one year? Right. Well, it's 14.1. 14.1 says the agreement can be terminated for any reason and without the need for notifying any reason to the other party. Such termination is effective no less than 12 months from the date of the notice of termination. On July 30th of 2013, FCA terminated the agreement, effective a year later in August of 2014. My understanding is that union is not contesting the termination of the agreement but rather contesting what happened before the termination. That's what they're claiming now. Honestly, the amended complaint and the complaint are pretty unclear about that. If you look at the complaint and the amended complaint, they say they got in business with AutoStar and then they terminated the contract, and therefore it's a violation of these provisions and we're entitled to our lost profits. But there's no discussion in there that I recall about, as I said before, here are certain deals that we weren't able to do. And frankly, even then, that's not a violation of the contract either because Article 1.1 from day one said we could have other people sell goods. I understand it's a non-exclusive. What about 8.1? Distributors shall place orders for contract goods through any systems and in accordance with any procedures that Chrysler may require or implement from time to time. So why isn't that giving Chrysler a discretionary duty to implement procedures that impliedly must comply with good faith and fair dealing? It does, but frankly, the facts, as alleged in the complaint, don't say. For example, Chrysler, well, first of all, I don't think it does. I think I spoke too fast. I think it says that, distributor, you have to follow our rules and our rules are going to be the terms and conditions, which may change. And frankly, that is pretty standard in a dealership agreement. To the extent there's just a- Does that mean that the implied covenant of good faith doesn't apply? I don't think it does there. I mean, there's the overall implied covenant of good faith and fair dealing that we talked about and I didn't get to because I got diverted. And that says that you can't take any action that would deprive the other party of the benefit of the bargain. And so a lot was said in the plaintiff's especially reply brief about the benefit of the bargain. And again here, the benefit of the bargain was that they could sell Chrysler vehicles for as long as we let them and for a year after we gave them notice of termination. And they got precisely that. What they didn't have was the ability to be the only seller. Could Fiat Chrysler have decided before the termination date actually happened, could Fiat Chrysler have decided to sell only through some other entity like auto sales and essentially utilize the provision that allows them to use other people as well? I believe so. So this is really a very one-sided contract with not really any benefit to union once Fiat decides, hey, we prefer somebody else. The one-year termination is meaningless. Possibly. Arguably, that doesn't seem to be consistent with any implied covenant of good faith and fair dealing. But, Your Honor, you would then make every contract an exclusive agreement by saying to do many things. My hypho was making it totally dealing with other entities and not at all with union. I honestly don't know because nobody has alleged that that was the case here. Right. Is there any? We're applying Michigan law, right? Right. Is there any Michigan case law in this hypothetical that I'm giving you? I didn't research that because I didn't think I had to, to be honest. The allegations here are that we did business with someone else at the same time we were doing business with them and the other company got some cars that maybe they thought they wanted and other car must have come. Well, the argument is in good faith. I think the argument must be there was some kind of corrupt bribery that went on. That's the argument. So you don't get dismissed. I mean, if there is any grounds for that argument, then the court ought not to have dismissed this. That is the argument. Now, you have to look at Iqbal and Twombly and what Iqbal and Twombly have to say, and I've got to tell you I cringe every time I hear and read FCA, corruption, bribery, because those are very serious allegations. And they aren't ones that you should just throw out willy-nilly. But, frankly, they're thrown out willy-nilly here. And if you look at Iqbal and Twombly. I thought they alleged certain particular officials in Angola are involved with this auto sales company and that Fiat Chrysler is dealing with either those individuals or auto sales in violation of the Foreign Corrupt Practices Act, et cetera. Well, again. Those are allegations, I understand. Right, exactly. And the first two you said, yeah, you have to assume for true these people are who they say they are. The last thing you said was, therefore, violations of the FCPA. That you don't have to assume is true under Iqbal and Twombly. Well, it would depend on what the specifics are in the complaint. Right. But if you look at Iqbal and Twombly, they say the complaint requires more than labels and conclusions. That's definitely what the allegations are. Is it your position at argument today that there are only conclusions in this complaint? Yes. Well, no. Some of the facts are true. Did auto sales sell the vehicles? Yes. No, but facts leading to what? All right. So there are facts that you acknowledge are true. But you say the shortcoming is that, I take it, that those facts are not followed by a conclusion to be drawn there from, that the court could have used. Correctly. Okay. Correct. But this is where it comes in that there's a proposed amended complaint, which is attempting to add more facts to comply with that. Correct. But the addition of those facts, and first of all, let me correct one thing with you, Judge. I'm not admitting all those facts are true because I don't know. I understand that. For purposes of a 12B6, you have to assume they're true. Right. Yeah. But to then reach, for example, the conclusion that ergo there was bribery, ergo there was FCPA. That's the kind of suspicion of a legally cognizable right of action that Twombly specifically said you have to have more than. As for your question, Judge Moore, they did add some more. They added some more names of people, and they added some more charts about corruption in Angola and all that. But, again, that still doesn't get to the question of whether there was an FCPA violation. And, frankly, they're trying to turn this case, really. What's your exact argument for upholding the denial of amendment? Denial of amendment? Well, because amendment would be futile. And what the district court did was she. . . The reason you say that, I know the district court said it also. Why? Because even. . . Two facts. Right. Twombly facts. Right. Twombly facts or not? I mean, Twombly. . . No. Does it meet Twombly? No.  It does not meet Twombly. It does not meet Twombly because, again, adding more facts about who owns AutoStar, et cetera, does not mean that. . . I mean, again, this is what you have to. . . Does not mean that FCPA knew about this, engaged in bribery, as they call it. That violates the implied covenant in 13.6, which only puts duties on union. That violates some implied covenant in 13.6, 8.1, 13.1, that allows them to bring a claim that we shouldn't have been doing business with anybody but them, which is all sorts of inferential leaps. Isn't there a claim that you shouldn't be doing business with AutoStar, which is, according to them, a corrupt Angolan entity? That is their claim. And, frankly, that's where I was going before, is they're trying to make this an FCPA case. And there is no private right of action under the FCPA. They're trying to make this an implied good-faith breach. Right. Contract by your client. They're not trying to recover, as I understand it. Maybe you can point me somewhere specific in the complaint. But they're not trying to get FCPA or Foreign Corrupt Practices Act damages or whatever other kinds of things the U.S. government could bring. Correct. Which they haven't. But the alleged breach of the implied covenant of good faith and fair dealing is the, as what was called earlier today, the corruption that we apparently engaged in. Okay. But my understanding of their position is that the contract explicitly requires them to comply with the law and to help FIAT comply with the law. And isn't there an implied covenant that FIAT will comply with the law? Yes. Oh, there is. Okay. Well. Great. I take that back. I think there's a larger implied covenant in the world that everyone's going to comply with the law. That's more than an implied covenant. Frankly, that's an obligation. But isn't it implied in the contract? If the contract says union will comply with the law and union will try to help FIAT comply with the law, doesn't that imply that FIAT will comply with the law? But it doesn't make noncompliance a breach of contract claim. The idea behind this is you're our distributor and if we, for example, get a subpoena and we have to respond, you have to answer. But it doesn't, and if you violate the law, there's an indemnification provision that's a one-way street in this agreement. If you don't abide by the law union, you will indemnify us, et cetera, et cetera. It isn't a two-way street. So in our opinion, if FCA doesn't comply with the law, it will answer to whoever it needs to answer to in the larger world of the government. But it doesn't mean they have to answer to union in the form of a breach of contract claim. Is there a difference between FCA violating the law with respect directly to its relationship with union? So like within the contours of that relationship versus FCA violating the law in another way with another party that might tangentially affect union. Is a direct relationship between union and FCA through the contract and if FCA has some obligation not to violate the law with respect to union specific, some nature of their relationship, you could violate the law. You could be shipping them cars that are illegal under Angolan law or something like that. Is that different than a violation of law that FCA may or may not have engaged in with a third party for reasons that aren't specific to union? I'm having a hard time answering your question. I had a hard time. I probably had a hard time asking. No, you're allowed to ask the tough questions. That's why you're up there. To me, again, you have to look at what this claim is. Breach of contract, tortious interference. We haven't talked about tortious interference at all. But breach of contract, tortious interference. When you read the contract as a whole, when you look at the provisions at issue, for us to do business with someone else, which is the real nub of all this, is not a breach of anything. It's certainly not tortious interference. It's actually our complying with provision 1.1 that says we can do it. So the fact that you then add a twist and say, hey, this other person you're doing business with is corrupt because it's the government, it's Angola, and therefore we can assume it's corrupt, which is ridiculous leaps of faith. That allows us to bring a claim for something we otherwise couldn't if you were doing business with ACME, for example. It doesn't make any sense. Thank you. Thanks. Counsel's right that we haven't spoken much about the tortious interference claim, and I want to make one point on that before touching on a few other points. The FCPA-related allegations about the relationship that grew over time between FCPA, the corruption allegations, in order to plead and ultimately prove a tortious interference claim, we can allege that the intentional interference prong was met by showing allegations of illegal or unethical behavior. And so I just wanted to make the point that it's not just those allegations don't just relate to 13.6 in the applied covenant claim. They also relate to the tortious interference claim. So for the contract claim, would you agree that there's a difference between a violation of law that's something directly a part of the contract between distributor and manufacturer as opposed to some other violation of law that's not sort of directly part of that contractual  You put that in the tortious interference category, which I understand. I think, can I try to rephrase your question? Can I ask a clarifying? Are you asking is it a breach if FCA tries to get a union to engage in corruption itself versus FCA allegedly participates in corruption totally with a third party absent union? Is one a breach and one not? They're both breaches. Because FCA contracted to perform under the contract in a corruption-free environment by saying it would take efforts to comply with the FCPA. So I don't think that does make a difference in terms of the implied covenant claim. I want to point out in the proposed amended complaint a number of paragraphs that do talk about specific deals. So specific orders that union had that FCA did not fulfill. And these are paragraphs 48, 63. It wasn't obliged to fulfill them, was it? Well, it was obliged to exercise its best efforts. No, it wasn't obliged to fulfill them. So if you have, as you do, you're arguing good faith in doing what? In attempting to fulfill the orders in good faith. But they're not obliged to fill the orders, it continues to be my question. We know it's non-exclusive. So it all says union must, union must. And then so you say, well, we know, number one, not exclusive. And union didn't fulfill what duty in good faith? What were they obliged to do that they didn't do in good faith? Take best efforts to fulfill the orders. And we haven't talked about 13.1. 13.1 also speaks to your question, Judge Cook. 13.1 says if union can't go through for a sale, they have an obligation to tell FCA that they can't complete a sale because FCA is going to, and then it gives them options to try to complete the sale. So that also suggests 13.1 is additional support for the understanding that FCA would. All of which in an environment where it's non-exclusive. No matter what, we must continually keep that in mind when we're trying to evaluate your claims. That's correct, Judge. But please, are you finished? I am, absolutely. Go ahead. A non-exclusivity provision, or excuse me, yeah, a non-exclusivity provision and a termination at will provision, neither one of those swallow up the other specific provisions that impose obligations, nor do they render illusory the implied covenant that's present in the complaint. I also wanted to, excuse me, in the law, I also wanted to make the point that the many paragraphs, we have not alleged that because this business relationship occurred in Angola, somehow corruption was inherent. My client has done business in Angola, refusing to engage in that behavior for 25 years. So that is not our allegation. We have detailed, detailed allegations about these particular parties, about AutoStar. And these are in paragraphs 47 through 64 of the proposed amended complaint. And we have then put forth with that some exhibits that can be looked at to make those even more plausible that shows that corruption is widespread in Angola from the Heritage Foundation, from the Secretary of State, and that this is exactly the type of thing that is commonplace. So it's simply untrue that we've made conclusory allegations. We've given detailed allegations that to answer your question, Judge Cook, far surpassed the plausibility. And this case should be allowed to proceed past the pleadings. If there's no other questions, I'll be done. Thank you. Thank you both for your argument. The case will be submitted. And would the clerk call the next case, please.